**SO ORDERED: September 06, 2006.**

_____
**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JASON PAUL STEWART and | ) | Case No. 05-23940-JKC-7 |
| NATALIE MICHELE STEWART, | ) | |
| | ) | |
| Debtors. | ) | |

### ORDER GRANTING TRUSTEE'S MOTION FOR TURNOVER

This matter came before the Court on Trustee Paul D. Gresk's (the "Trustee") Motion for Turnover, wherein he argues that certain escrowed wages earned by Debtor Jason Paul Stewart ("Stewart") are property of the estate subject to the Trustee's administration. For the reasons stated below, the Court agrees.

On October 7, 2005, Stewart and his wife Natalie Michele Stewart (collectively, the "Debtors") filed a voluntary Chapter 7 bankruptcy petition. At the time of the filing, Stewart was employed as a teacher by Indianapolis Public Schools ("IPS"). Incidental to his employment, Stewart had portions of his bi-weekly salary placed in an escrow account that is maintained by IPS. At Stewart's election, the funds could be paid out either in one lump sum or in five equal

installments during the summer months when he was otherwise not drawing a salary. Under either option, the funds would not be taxed until paid. Stewart also had the right to liquidate the escrow account at any time simply by submitting a request to IPS's payroll office.

Debtors did not reference or otherwise disclose the existence of the escrowed funds in either their Schedules or Statement of Affairs. Nor did they list the funds as exempt on Schedule C. The Trustee only learned of the existence of the account at Debtors' 341 meeting. Thereafter, Trustee obtained a copy of a payroll check from Stewart, which indicated a total of $1,864.46 in escrowed funds as of October 31, 2005 (the "Funds'). The Trustee eventually filed the Motion for Turnover, to which the Debtors objected.

Pursuant to § 541(a), the bankruptcy estate is comprised of all legal and equitable interests that the debtor has in property "wherever located and wherever held" as of the commencement of the case. From that definition it would appear that the Funds are property of the estate. Debtor maintains, however, that the Funds are excepted from property of the estate under § 541(b)(7), a provision that was added to the United States Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Contrary to Debtors' argument, that law became effective on October 17, 2005, ten days after Debtors filed their petition. Thus, § 541(b)(7) does not apply in this case.

Even if § 541(b)(7) did apply, the Funds do not fall under any of its categories. Section 541(b)(7) states that the estate property does not include any amount:

> (A) withheld by an employer from the wages of employees for payment as contributions
> (i) to
> (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

>    (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>    (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>    except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or
>    (ii) to a health insurance plan regulated by State law whether or not subject to such title; or
>    (B) received by an employer form employees as contributions–
>    (i) to
>    (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>    (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>    (IV) a tax-deferred annuity under section 403(b) of the Internal Revenue Codeof 1986;
>    except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2) or
>    (ii) to a health insurance plan regulated by State law whether or not subject to such title . . . .

Here, Debtors reason that because Stewart–had he so elected–could have instructed IPS to transfer the Funds into a Qualified Employee Retirement Income Security Act ("ERISA") account, they are not property of the estate under § 541(b)(7)(A)(i)(I). The Funds were not, however, placed in an ERISA account and, therefore, § 541(b)(7)(A)(i)(I) does not apply.

Debtors further argue that public policy mandates that they be allowed to retain the Funds. The Court disagrees. That fresh start provided by bankruptcy relief is facilitated, in part, by the exemptions a debtor is able to claim, along with the generous discharge provided by 11 U.S.C. § 727. The fresh start, however, is not without limit and must be weighed against creditors' rights to recover any non-exempt assets. The Court will not upset that balance or provide Debtors with an additional exemption simply because it would give them even more of a fresh start than what is already explicitly provided for by the Code.

3

Finally, Debtors claim that the Funds are partially protected from turnover by Indiana Code § 24-4.4-5-105, Indiana's wage garnishment statute. The statute provides in relevant part:

> [T]he maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment to enforce the payment of one (1) or more judgments against him may not exceed:
> (a) twenty-five percent (25%) of his disposable earnings for that week; or
> (b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 U.S.C. 206(a)(1) in effect at the time the earnings are payable;
> whichever is less. In the case of earnings for a pay period other than a week, the earnings shall be computed upon a multiple of the federal minimum hourly wage equivalent to thirty (30) times the federal minimum hourly wage as prescribed in this section.

Debtors direct the Court to its previous, unpublished opinion in *In re Bubb*, Case No. 02-05321-JKC-7 (Oct. 4, 2002). In that case, the debtor successfully argued that Indiana Code § 24-4.5-5-105 applied to $8,664.72 in income that he had earned but had not yet been paid as of the petition date.[1] In overruling the Chapter 7 trustee's objection to the debtor's claimed exemption, the Court explained:

> No Indiana court has specifically addressed whether the garnishment statute provides an exemption in bankruptcy. However, the Indiana Supreme Court has acknowledged that "[g]arnishment exemption statutes in Indiana have constitutional underpinnings." *See Mims v. Commercial Credit Corp.*, 261 Ind. 591, 307 N.E.2d 867 (Ind. 1974). Article 1, Section 22 of the Indiana Constitution provides that "[t]he privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted . . . ." As the supreme court further commented: "It is not without significance that Article 1 enumerates the Bill of Rights. A debtor, in Indiana, has a constitutional right to have a   reasonable amount of his or her property exempted from garnishment. Garnishment exemptions merely implement that right."

---

[1] The Trustee directs the Court to the Indiana Court of Appeals' decision in *Fisher Body v. Lincoln Nat'l Bank & Trust Co. of Fort Wayne*, 563 N.E.23 149 (Ind.Ct.App.1990) and argues that *Bubb* may have been incorrectly decided because the funds at issue were likely a lump sum and not a periodic income payment. While the opinion does not explicitly state this, the debtor in *Bubb* was a physician and the money at issue was indeed his regular monthly income.

> Given the constitutional significance of the garnishment statute, the Court cannot conclude that Indiana Code § 24-4.5-5-105 was intended to apply only to non-bankrupt debtors. Such a distinction compromises the fundamental purpose behind the garnishment statute and deprives a certain class of debtors, *i.e.*, those in bankruptcy, of their constitutional right to the "necessary comforts of life." Because the Trustee has failed to set forth any justification for holding differently, the Court finds that Indiana Code § 24-4.5-5-105 constitutes an exemption under Indiana law that may be claimed by a debtor in bankruptcy. As such, the Trustee's objection to the Debtor's claimed exemption is overruled.

*Bubb* at 2 (internal footnotes omitted).

In response to the Debtors' argument, the Trustee has invited the Court to reconsider *Bubb* in its entirety. The Court declines that invitation and, instead, finds the decision to be factually distinguishable. Indiana's wage garnishment statute was intended to protect a judgment debtor's income as it is earned on a week-to-week or month-to-month basis. *See Fisher Body*, 562 N.E.2d at 151. Here, Stewart, upon earning his wages, had them placed in what is essentially a savings account–an account that he had control over and could liquidate at any time. In this sense, the Funds were transformed from income into savings.

There is no question that the Funds would be subject to the Trustee's administration if Stewart had foregone the escrow arrangement and merely set aside the money in his own savings account. While there is no Indiana case directly on point, the Court cannot conclude that the Funds are protected from turnover pursuant to the Indiana Code § 24-4.5-5-105. To conclude otherwise would punish creditors merely because IPS, and not the Debtors, maintained the Funds as savings. Instead, the Court holds that the Funds are subject only to the exemption provided by Indiana law for intangible personal property.[2]

---

[2] Indiana Code § 34-55-10-2 provides a $300 exemption for intangible personal property. Debtors, however, did not claim this exemption on Schedule C.

For these reasons, the Court grants the Trustee's Motion for Turnover.

###

Distribution:

Paul D. Gresk
Mark Zuckerberg
UST